**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| HANK CASSI, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-05-1576 |
| SHARPER IMAGE CORPORATION, | * | |
| Defendant. | * | |

*****

## MEMORANDUM OPINION

Plaintiff Hank Cassi ("Plaintiff"or "Cassi") has brought this class action against Sharper Image Corporation ("Sharper Image" or "Defendant"), alleging that Sharper Image violated Maryland state law in its marketing and sale of several air purifiers, including the "Ionic Breeze Quadra" and "Ionic Breeze GP" products (collectively, "Ionic Breeze"). In his Complaint, Plaintiff sets forth claims for deceptive and misleading practices under Maryland's Consumer Protection Act, for unjust enrichment, for breach of express and implied warranties of merchantability, for strict liability, and for failure to warn. Currently pending before the Court are Defendant's Motion to Stay, Abate, Dismiss, or Transfer [10] and Plaintiff's Motion to Remand [13]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will DENY in part and GRANT in part Defendant's Motion to Stay, Abate, Dismiss, or Transfer and DENY Plaintiff's Motion to Remand.

## FACTUAL & PROCEDURAL BACKGROUND

Defendant Sharper Image is a California corporation. In 2001, Sharper Image introduced new air purifiers known as "Ionic Breeze Air Purifiers." These air purifiers are electrostatic

precipitators and filter air by trapping charged airborne particles on charged stainless steel collection blades. Plaintiff's claims relate to several of these "Ionic Breeze Air Purifiers" including the "Ionic Breeze Quadra" and the "Ionic Breeze GP."

Plaintiff purchased the Ionic Breeze, manufactured by Defendant, in April of 2004.

In February 2002, *Consumer Reports* published an article on portable air room cleaners. In that article, *Consumer Reports* reviewed Defendant's Ionic Breeze Quadra Silent Air Purifier and rated this product last among the sixteen models tested. The article also categorized the performance of the Ionic Breeze as "Poor." *Consumer Reports* published a similar article in October of 2003. Once again, the magazine gave the Ionic Breeze a "Poor" ranking.

In May 2004, *Consumer Reports* released a third article entitled, "New Concerns About Ionizing Air Cleaners." Like the previous two articles, this piece rated the Ionic Breeze as "Poor," but also indicated that the air purifier produced ozone while it functioned. The authors of the article measured the ozone emission at 48 parts per billion (ppb), and the article stated that the Ionic Breeze produced more than 50 ppb[1] of ozone over a twenty-four hour period.

On April 18, 2005, Plaintiff filed this class action in Circuit Court for Montgomery County. Defendant filed Notice of Removal to this Court on June 10, 2005. Plaintiff has brought this class action on behalf of all Maryland residents who have purchased the Ionic Breeze and other air purifiers manufactured by Defendant that release more than 50 ppb of ozone within the last four years. (Compl. ¶ 24.) Plaintiff's Complaint includes five counts. Count I alleges that Defendant violated the Maryland Consumer Protection Act, Md. Code Ann, Com. Law §§ 13-101 to -501

---

[1] Plaintiff alleges that the 50 ppb figure is significant because FDA regulations require that indoor medical devices produce no more than 50 ppb of ozone. In addition, studies indicate that exposure to high levels of ozone increases the risk of respiratory events.

2

(2005). Count II is a claim for unjust enrichment and requests a constructive trust. Count III alleges breach of express warranty and implied warranties of merchantability and fitness for a particular purpose. Count IV sets forth a claim for strict liability. Finally, Count V alleges that Defendant acted negligently and failed to warn Plaintiff and other class members about the harmful nature of its products.

Plaintiff is not the person first to bring suit against Sharper Image. Several others have filed class actions in state and federal court and have challenged the marketing and effectiveness of Sharper Image's Ionic Breeze.

On June 16, 2005 Defendant filed a Motion to Stay, Abate, Dismiss or Transfer. Plaintiff has opposed this motion and filed a Motion to Remand this case to state court on June 29, 2005. These motions are ripe and ready for this Court's review, and an Opinion shall now issue.

## **DISCUSSION**

I.   Defendant's Motion to Stay, Abate, or Dismiss

Defendant argues that this action parallels the other state and federal court actions, and therefore, this Court should stay or dismiss the action pursuant to either the *Colorado River*[2] doctrine, this Court's inherent authority, or *res judicata*.

A.   The *Colorado River* Doctrine

As a general rule, "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282 (1910). Federal courts have a "virtually an unflagging obligation . . . to exercise the jurisdiction given them," and consequently, the existence of proceedings in state court does not by

---

[2] 424 U.S. 800 (1976).

itself preclude parallel proceedings in federal court. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Supreme Court has recognized a limited exception to this general rule; "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

In *Colorado River*, the Supreme Court articulated the rule known as the *Colorado River* doctrine and held that federal courts may abstain from exercising their jurisdiction where a federal case duplicates contemporaneous state proceedings and "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," clearly favors abstention. *Colorado River*, 424 U.S. at 817; *see also Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002). In particular, to abstain under the *Colorado River* doctrine, a court must find that: (1) parallel proceedings are ongoing in state and federal court, and (2) "exceptional circumstances" counsel in favor of abstention. *Colorado River*, 424 U.S. at 813. In determining whether the particular facts of the case warrant abstention, the district court need not "find some substantial reason for the exercise of federal jurisdiction . . . rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest justifications,' that can suffice under *Colorado River* to justify surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).

The decision to defer proceedings because of parallel state litigation remains committed to the discretion of the district court. *Kruse v. Snoeshoe Co.*, 715 F.2d 120, 122 n.12 (4th Cir. 1983).

As an threshold matter, a district court must find parallelism between the state and federal proceedings to invoke the *Colorado River* doctrine. Abstention represents an exception to the rule

and "may be considered only when 'the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'"  *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005) (quoting *Moses H. Cone,* 460 U.S. at 28). The Fourth Circuit has defined suits as parallel where substantially the same parties litigate substantially the same issues in different forum.  *See New Beckley Min. Corp. v. Int'l Union*, 946 F.2d 1072, 1073 (4th Cir. 1991); *LaDuke v. Burlington N. R.R.*, 879 F.2d 1556, 1559 (7th Cir. 1989). As a corollary, a difference in the remedies sought or the issues raised counsels against abstention. *See New Beckley*, 946 F.2d at 1074.

The present case differs from the other class actions in several key respects, which preclude this Court from finding that this action parallels the state court actions.  First, of the state class actions identified by Defendant, only one purports to represent consumers nationwide who bought the Ionic Breeze.  Second, the complaint in that case, *Robertson v. Sharper Image Corp.,* alleges violations of Section 17200 of California's Business and Professions Code and breach of express warranty.  While, as Defendant notes, some provisions of California's Business and Professions Code vaguely resemble the Maryland Consumer Protection Act, the two statutes are not identical. *Compare* Md. Code Ann., Com. Law §§ 13-101 to 501 *with* Cal. Bus. & Prof. Code §§ 17200, 17500-17509.  Defendant implicitly concedes that fact in its brief, explaining that "California's strong consumer protection law are just as broad, if not broader, than Maryland's."  Furthermore, Plaintiff's Complaint also contains several unique claims, including a claim for unjust enrichment, breach of implied warranty, strict liability, and negligence.  Because of these differences, this suit and the other proceedings do not meet the definition of "parallel proceedings," and as a result, this Court cannot rely on the *Colorado River* doctrine to abstain from exercising jurisdiction.

Defendant also contends that this Court should stay this action based on its inherent authority or *res judicata*. To the extent that these arguments are predicated on the assumption that these proceedings parallel the state court proceedings, this Court need not analyze these arguments further.

B.      Plaintiff's Express Warranty Claim and *Res Judicata*

Having determined that this case does not parallel the California state court case, this Court will next turn to the issue of whether any other legal doctrine militates in favor of staying all or part of this case. This Court has the inherent authority to stay a portion of the action, and under Rule 42 of the Federal Rules of Civil Procedure, this Court has broad discretion to bifurcate claims. *See* Fed. R. Civ. P. 42(b); *see also Hutchinson v. Yadkin Valley Bank & Trust Co.*, 5 F.3d 750 (4th Cir. 1993); *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1990). This case and the California class action both allege breach of express warranty claims. If the California court were to rule on this issue, it appears that the doctrine of *res judicata* would bar Plaintiff's claim. *Cf. Covenance Laboratories v. Orantes*, 338 F. Supp. 2d 613, 617 (D. Md. 2004) (noting potential preclusive effect of state court judgment). Because the California litigation may have a preclusive effect on plaintiff's breach of express warranty claim, bifurcation and stay is appropriate. Therefore, this Court will bifurcate and stay Plaintiff's express warranty claim.

C.      Transfer

In the alternative, Defendant suggests that this Court should transfer this action to the Central District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent the waste of time, energy, and money" and "to protect litigants, witnesses, and the

public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). To prevail on a motion to transfer venue under § 1404, "the defendant must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty Constr. Co., Inc.,* 198 F. Supp. 2d 710, 711 (D. Md. 2002) (internal quotation omitted); *see also Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002); *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994).

Deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The host of convenience factors a court should consider include:

> (1) the plaintiff's choice of forum;
> (2) relative ease of access to sources of proof;
> (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses;
> (4) possibility of a view of the premises, if appropriate;
> (5) enforceability of a judgment, if one is obtained;
> (6) relative advantage and obstacles to a fair trial;
> (7) other practical problems that make a trial easy, expeditious, and inexpensive;
> (8) administrative difficulties of court congestion;
> (9) local interest in having localized controversies settled at home;
> (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and
> (11) avoidance of unnecessary problems with conflicts of laws.

*Brown v. Stallworth*, 235 F. Supp. 2d 453, 456 (D. Md. 2002) (quoting *Choice Hotels Int'l, Inc. v. Madison Three, Inc.,* 23 F. Supp. 2d 617, 622, n.4 (D. Md. 1998) (internal citations omitted)). The decision whether to transfer venue is committed to the sound discretion of the trial court. *See Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991).

Weighing the factors listed above, the balance tips heavily in favor of this Court retaining jurisdiction over this suit. Generally, a plaintiff's choice of forum is entitled to substantial weight. *See Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005). In addition, "a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Koster v. (American) Lumbermen's Mutual Casualty Company*, 330 U.S. 518, 524 (1947). Defendant argues that this Court should give less deference to Plaintiff's choice of forum because he represents a class, citing *Koster v. (American) Lumbermen's Mutual Casualty Company*. *Koster* concerned a derivative suit and is inapposite to the case at bar. *Id*. at 525 (holding that Plaintiff's choice of forum in a derivative suit was entitled to less deference where Plaintiff only had a minimal interest to protect). Plaintiff brings this class action on behalf of Maryland residents under Maryland law. Other members of the class could not have brought this action in almost any other state, as Defendant asserts. That residents of other states have brought actions against Defendant in other fora should not deprive Plaintiff of the presumed advantages of litigating in his home jurisdiction, especially, where, as here, Plaintiff's claims are not entirely subsumed by the other pending class actions.

Defendant also states that many of its potential witnesses are located in California. Although the convenience of the witness is an important consideration in transfer decisions, a court must also consider whether either party employs or has control over these potential witnesses. *See* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15 Federal Practice and Procedure § 3851 (explaining that although convenience of witnesses is perhaps the most cited reason for granting a motion to transfer, such motions are regularly denied when witnesses are employees of a party and their presence can be obtained by that party). Defendant has named its agents and employees as

8

potential witnesses, and Defendant has not averred that these witnesses would be unable to testify in Maryland. Furthermore, nothing indicates that compulsory process is needed to obtain their testimony.

With respect to the convenience of the parties, both sides would suffer some inconvenience in connection with litigation, regardless of the forum. If this Court were to transfer this case to the Central District of California, Plaintiffs would have to travel from Maryland to participate in the proceedings. It remains well-settled that a court should deny a motion to transfer under Section 1404(a) if the transfer would only shift the burden and inconvenience of trial from the defendant to the plaintiff. *Cf. Choice Hotels Int'l., Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 (D. Md. 1998) (ruling that shifting burden and inconvenience from defendants to plaintiff is not a proper purpose of a transfer of venue under Section 1404(a)).

Finally, the Court finds that the other factors do not support Defendant's position that this Court should transfer this action. As a court sitting in Maryland, this Court has a greater interest in adjudicating this matter than a court in California. Moreover, no evidence suggests that Defendant's right to a fair, easy, or inexpensive trial will be compromised if this Court retains jurisdiction. Upon balancing these factors, this Court remains unpersuaded that transferring this case would advance the "interests of justice." Therefore, Plaintiff's choice of forum will not be disturbed.

II.     Plaintiff's Motion to Remand

Plaintiff also challenges the appropriateness of this forum in his Motion to Remand. In essence, Plaintiff argues that this Court lacks subject matter jurisdiction over this class action because he alleges that the aggregate claims of all individual class members do not exceed the jurisdictional requisite set by the Class Action Fairness Act of 2005 ("CAFA") of $5,000,000.

9

As in all disputes involving statutory interpretation, this Court must begin its analysis of CAFA by examining the text of the statute. *See Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1 (2000) (noting that a court must "begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there'" (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)). CAFA provides that federal courts have original jurisdiction over class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). In addition, the statute clarifies that for the purposes of meeting the jurisdictional amount, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."

Once the proponent of jurisdiction has set out the amount in controversy, a federal court may dismiss or remand the case for lack of jurisdiction only if it appears a "legal certainty" that the judgment cannot meet the jurisdiction minimum. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Schaefer v. Aetna Life & Cas. Co.*, 910 F. Supp. 1095, 1097 (D. Md. 1996).

Here, Defendant has demonstrated a reasonable probability that the amount in controversy exceeds the minimum. In the Complaint, Plaintiff requests disgorgement of "all sums . . . received from Plaintiff and the class members as a result of the illegal and improper manner in which Defendant advertised and marketed Ionic Breeze Quadra, Ionic Breeze GP or other air purfier[s] from Defendant to consumers." Thus, Plaintiff expressly seeks the purchase price of all of these products. Defendant has furnished evidence that, in the preceding four years, the total proceeds of sales of these products exceeds $5,000,000. (Aff. Robert Schultz.) Because Defendant has

10

demonstrated that this suit meets CAFA's amount in controversy requirement, this Court will deny Plaintiff's motion to remand.

## **CONCLUSION**

For all of the aforementioned reasons, the Court will deny in part Defendant's Motion to Dismiss, Stay, or Transfer [10] this case and deny Plaintiff's Motion to Remand [13]. An Order consistent with this Opinion will follow.

Date:  <u>January 10, 2005</u>                             <u>         /s/                   </u>
                                                                Alexander Williams, Jr.
                                                                United States District Court